IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

ANTHONY-DECARLO HAYES, SR.,          )
                                     )
      Plaintiff,                     )
                                     )
v.                                   )      No. 12-2253-JDT-tmp
                                     )
CITY OF MEMPHIS, et al.,             )
                                     )
      Defendants.                    )
                                     )
_____

REPORT AND RECOMMENDATION
_____

Plaintiff Anthony-DeCarlo Hayes, Sr., filed a *pro se* complaint against the City of Memphis and twenty-five other defendants on March 29, 2012, along with an application to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The court granted Hayes's application to proceed *in forma pauperis*. (ECF No. 3.) Hayes then filed an amended complaint on December 17, 2012. (ECF No. 4.) Pursuant to the Order Referring Cases (ECF No. 5), this case was referred to the United States Magistrate Judge for all pretrial matters for determination and/or report and recommendation. For the reasons below, it is recommended that all federal claims be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B), the court decline jurisdiction over the remaining state law claims pursuant to 28

U.S.C. § 1367(c)(3), and the state law claims be dismissed
without prejudice.[1]

## I.  PROPOSED FINDINGS OF FACT

Hayes brings this action alleging federal and state law
claims in connection with his former employment with the City of
Memphis ("City").  Hayes, a resident of Memphis, Tennessee,
purports to bring this action "In Propria Persona, an Indigenous
American Indian, [Roll] 3252, Archive1242490" and "files this
action pursuant to the organic Constitution for the United
States of America."[2]  (Am. Compl. ¶ 1.)  The amended complaint
does not identify exactly what job Hayes held with the City, but
it appears that he worked in some capacity within the City's
Community Enhancement Division ("CED").  He alleges
"retaliation, deprivation, and racial discrimination,
defamation, as well [as] wrongful termination for filing EEOC

---

[1]The court's screening pursuant to 28 U.S.C. § 1915(e)(2)(B) will
be conducted by reviewing the more detailed 28-page amended
complaint, as opposed to the original 19-page complaint.

[2]On October 7, 2014, Hayes filed a document purportedly from "The
Ministry of Consulate of Moorish Xi Anu of Chakchiuma," stating
that "Anthony Decarlo Hayes is officially recognized and
registered with the Foreign Ministry a Consulate Official who
enjoys full Immunities and Privileges as accorded from the
status of such Consulate, verified by Vice Consul General Zara
Yaffa Bey." (ECF No. 8.)  The document goes on to state, "This
correspondence is to inform you that all court action made by
the above persons from the above stated cases is to be
terminated."  Attached to the above-described document is a
"Transfer Statement" signed by Hayes, which apparently relates
to Hayes's residence.  These documents do not alter the
allegations in the amended complaint.

charges for 'Workplace Violence' and for injuncti[ve] relief against Defendants, for violations of assault and intimidation . . . ." (Id.) He further alleges that "Defendants conspired to deprive[] the Plaintiff of his civil rights under color of law and constructively retaliat[ed], executed reprisals, committed retribution, and discharged the Plaintiff for filing previous EEO/EEOC charges of Discrimination and whistle blowing about federal embezzlements of funding misused by department heads and the fact of hiring unqualified individuals for the position of Zone Manager with the Code Enforcement Division. . . . Defendant(s) Mayor [and] police officer's actions are tantamount to nothing less than Criminal Treason against the United States Constitution and the People of the United States." (Id.) Hayes names a total of twenty-six defendants in his amended complaint. The defendants include: (1) the City; (2) City Mayor A C Wharton, Jr.; (3) Johnie McKay, the Director of the CED; (4) Onzie Horne, the Deputy Director of the CED; (5) Otis Tidwell, Clarence Coleman, Bill Lewis, and Joseph Norman, who are managers with the CED; (6) Eric Muhummad, James Jackson, Burnie Mitchell, William Lewis, William Mashburn, Barry Gray, and Tammy Walker, who are inspectors with the CED; (7) Gerald Thornton, an attorney for the City's Labor Relations Division; (8) the American Federation of State, County, and Municipal Employees ("AFSCME") Local 1733; (9) Harvier Smith and Chad Johnson, who

are union representatives for AFSCME Local 1733; (10) Gerald W. McEntee, AFSCME President; (11) members of the Civil Service Board, including John Horne, Carnita McKeithen, and Danny Schaffzin; (12) Alpha Reporting Corporation ("Alpha"), a private court reporting agency; (13) Cathy May, Alpha's owner; and (14) Cheryl Abbott, Cindy Swords, and Cora Lewis, who are court reporters with Alpha. Hayes asserts causes of action for violations of Title VII of the Civil Rights Act of 1964; the Americans with Disabilities Act ("ADA"); 42 U.S.C. §§ 1981, 1983, 1985, and 1986; 18 U.S.C. §§ 241, 242, and 1513; and various state laws, including defamation, assault, and retaliatory discharge. (Am. Compl. ¶¶ 56-72.) Although the allegations and events contained in the amended complaint are difficult to follow, Hayes appears to allege that he was physically assaulted by various co-workers while on the job, was subjected to a hostile work environment, and then was wrongfully terminated. Specifically, he alleges as follows:

Over a three year period, Hayes was "subjected to Workplace violence and had written memos and told supervisors, union reps. and filed grievances, EEO/EEOC complaints lawsuits with no assistance[.]" (Am. Compl. ¶ 30.) On March 29, 2011, Inspector James Jackson struck Hayes on his neck and back for no apparent reason. Hayes informed CED Managers Bill Lewis and Clarence Coleman of the assault. (Id.) Hayes requested medical attention

and filed a complaint for an on-the-job injury, but Lewis changed that request from an on-the-job injury to a request for a sick day.  (Am. Compl. ¶ 31.)

Hayes was treated for three weeks for spine injuries.  He returned to work to find that his request for an on-the-job injury was denied by CED Manager Otis Tidwell and that he was required to use his sick leave for his time off due to the injury.  (Am. Compl. ¶ 32.)  Tidwell, as well as others, had previously assaulted Hayes at work on multiple occasions in January and June 2010.  (Am. Compl. ¶ 33.)  Hayes reported these assaults, but nothing was done.  (Id.)

On July 18, 2011, CED Inspector Charles Brown "came to Plaintiff attempting to horseplay" and was told by Hayes to stop.  Hayes reported this incident to Lewis.  (Id.)  On July 20, 2011, Inspector Eric Muhammad made a verbal threat toward Hayes.  (Am. Compl. ¶¶ 34-35.)  Hayes continued to inform his managers, Coleman and Lewis, about his mistreatment, but no investigation was conducted.  (Am. Compl. ¶ 36.)

On October 19, 2011, CED Inspector Burnie Mitchell struck Hayes on his back and neck in the presence of other CED Inspectors after a work meeting, for no apparent reason.  Although Hayes informed Director Johnie McKay of the assault, no action was taken against Mitchell.  (Am. Compl. ¶ 37.)  Hayes then called 911, and when an officer arrived and attempted to

investigate the assault, McKay told the officer that "no one saw anything." (Am. Compl. ¶ 38.)

Sometime later in October 2011, Hayes sustained another on-the-job injury. He went to the emergency room and was given two weeks of limited duty, during which time he was ordered not to drive a vehicle. (Am. Compl. ¶ 39.) However, on October 24, 2011, CED Manager Joseph Norman ordered Hayes to drive a vehicle to a meeting, even though Hayes complained of drowsiness from taking medication. (Am. Compl. ¶ 40.)

On November 16, 2011, five unidentified Memphis Police Department officers approached Hayes's residence, drew their weapons, and left a letter on his door. The letter informed Hayes that he had been suspended indefinitely with pay pending an investigation and that he was barred from being on any City property. (Am. Compl. ¶ 42.) On that same date, Hayes contacted his union representative, Havier Smith, and informed him about the situation. (Am. Compl. ¶ 43.) In December 2011, Hayes was informed by letter that a hearing had been held and that a decision was made to terminate his employment for "violating the City's personnel manual." (Am. Compl. ¶ 44.) Hayes had not been given proper notice about the hearing. (Id.) Smith told Hayes that the City "did not properly notify you because they are planning to lock you up for trespassing on city property." (Id.) Hayes was never afforded an opportunity "to

address any suspension nor termination or any rebuttal to any action taken by the City of Memphis." (Am. Compl. ¶ 45.)

On January 3, 2012, Hayes was terminated and advised by Smith to see another union representative, Chad Johnson, to file a grievance. Hayes did not receive the third step of his grievance procedure as required by the memorandum of understanding between the City, the City's employees, and the union. (Am. Compl. ¶ 46.) Union representatives "seem[ed] uninterested" in filing for arbitration on Hayes's behalf, allegedly because Hayes had previously filed a civil action against the union and an unidentified union official. (Am. Compl. ¶ 47.)

Hayes alleges the City deliberately failed to provide him with notice of his appeal rights. (Am. Compl. ¶ 48.) Harvier Smith and Labor Relation's attorney Gerald Thornton "coordinated" to thwart Hayes's attempts to file grievances regarding his termination. (Id.) Smith later told Hayes that Thornton "initiated this whole matter because he had dealt with Mr. Hayes in [an] earlier matter when he was a police officer." (Id.)

Between February 15 and March 20, 2012, Hayes sent letters to Shelley Seeberg, Smith, and Gerald McEntee requesting assistance, but received no help. (Am. Compl. ¶ 49.) Later, Hayes was told he had ten days to appeal the decision of the

City's termination. He sent a letter requesting a civil service appeal. (Id.) On May 11, 2012, Hayes was given an opportunity to be heard by the Civil Service Board at a preliminary hearing. (Am. Compl. ¶ 50.) The Civil Service Board found that the City had not afforded Hayes due process and "decided it would hear the full matter" on July 20, 2012. (Id.) At the July 20 hearing, Tammy Walker, William Mashburn, William Lewis, and Barry Gray provided testimony that was allegedly false and defamatory. (Am. Compl. ¶ 51.) According to Hayes, the Civil Service Board "failed to allow the plaintiff the right to rebut any statement made against him and entered the statements in the civil service record as evidence." (Am. Compl. ¶ 52.) The Board issued its decision on October 30, 2012, upholding Hayes's termination. (Id.)

On November 1, 2012, Hayes requested a copy of the record of the hearing, but was informed that the Board had rendered its decision based upon the members' notes. (Am. Compl. ¶ 53.) On November 2, 2012, Hayes spoke to Cheryl Abbott of Alpha to request the record, and was told he could get the transcript in three weeks. (Am. Compl. ¶ 54.) After three weeks passed, Abbott sent Hayes the "wrong information" in an attempt to "doctor up the record." (Am. Compl. ¶ 55.) Hayes discovered that Alpha employees Cindy Swords and Cora Lewis were responsible for transcribing the hearings. (Id.) Hayes "had to

file his request for appeal before 60 days in which he did not have the record available when he filed for judicial review which Alpha Reporting along with [its] owner and employees are liable for sabotaging his chancery court case." (Id.)

## II. PROPOSED CONCLUSIONS OF LAW

### A. Standard of Review

The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action: (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i-iii). In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rule Civil Procedure 12(b)(6), as stated in Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegation in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 681). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide

the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679; see also Twombly, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) (affirming dismissal of *pro se* complaint and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975)); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating "[n]either this court nor the district court is required to create Payne's claim for her."); cf. Pliler v. Ford, 542 U.S. 225, 231 (2004) ("District judges have no

obligation to act as counsel or paralegal to pro se litigants."); Young Bok Song v. Gipson, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of pro se litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

## B.  Title VII

Title VII prohibits an employer from discriminating against an employee on the basis of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Absent direct evidence of discrimination, a plaintiff can establish a *prima facie* case of disparate treatment discrimination under Title VII by showing that he or she (1) is a member of a protected group; (2) was subject to an adverse employment action; (3) was qualified for the position; and (4) a similarly situated, non-protected employee was treated more favorably.[3]  Clayton v. Meijer, Inc., 281 F.3d 605, 610 (6th Cir.

---

[3]Although a plaintiff at the Rule 12(b)(6) stage is not required to present evidence on the elements of the *prima facie* case, the complaint must nonetheless "contain either direct or inferential allegations respecting all the material elements to sustain a

2002); Primes v. Reno, 190 F.3d 765, 766 (6th Cir. 1999). Hayes

has not provided sufficient factual allegations to plausibly

state a claim for employment discrimination under Title VII.[4]

Hayes makes only the conclusory assertion that he was

discriminated against based on his status as "an indigenous

American Indian." The amended complaint, however, does not

contain any allegations that would support a plausible inference

that he was terminated or subjected to any other adverse

employment action because of his membership in a protected

group. Crumbsy v. Friese Enterprises, No. 1:14-CV-3971-TWT 2015

WL 430042, at *3 (N.D. Ga. Feb. 2, 2015) (stating that

"plaintiff appears to allege simply that he was 'physically

assaulted' 'at the workplace,' and that 'th[e] company didn't []

provide [a] safe work place' for him '[b]ecause of [his] race .

. . [and his] religion,'" and concluding that plaintiff's

allegations were insufficient to state a claim because

"[p]laintiff must set forth specific allegations . . .

---

recovery under some viable legal theory . . . . conclusory
allegations or legal conclusions masquerading as factual
conclusions will not suffice to prevent a motion to dismiss."
Mezibov v. Allen, 411 F.3d 712 (6th Cir. 2005); see also Keys v.
Humana, Inc., 684 F.3d 605, 609 (6th Cir. 2012) (citing
Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002)).

[4]While the amended complaint makes scattered and conclusory
references to age discrimination (see, e.g, Am. Compl. ¶¶ 60,
63, 68), the amended complaint contains no allegations that
could plausibly support a claim under the Age Discrimination in
Employment Act. 29 U.S.C. §§ 621 et seq.

demonstrat[ing] that he was treated differently because of his race [or religion], that is, he must set forth sufficient allegations that race [or religion] was the reason he [suffered an adverse employment action].") ; Daniels v. Costco Wholesale Corp., No. 1:14-CV-2585-TWT, 2014 WL 5825316, at *5 (N.D. Ga. Nov. 10, 2014) ("Simply put, because Daniels does not allege any facts indicating that unlawful race discrimination was the reason for [her termination or her employer's failure to accommodate her disability], or assert any other facts tending to show that racial animus motivated [the alleged adverse actions], she has failed to state a plausible claim of race discrimination in conformity with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure[.]") (internal quotations and citations omitted); Lawtone-Bowles v. City of New York, Dept. of Sanitation, 22 F. Supp. 3d 341, 350 (S.D.N.Y. 2014) (finding that plaintiff failed to state a claim for relief under Title VII because "the plaintiff alleges that she is a member of multiple protected classes, but she has not alleged any facts that yield an inference that she was discharged because of her membership in these protected classes. Although a plaintiff need not allege each element of a *prima facie* claim to survive a motion to dismiss, the facts alleged must support a plausible inference of discrimination on the basis of a protected characteristic. Even construing the plaintiff's *pro se*

Complaint liberally to raise the strongest arguments it suggests, the plaintiff has failed to state a claim that is plausible on its face.") (internal citations omitted); <u>Sheller-Paire v. Gray</u>, 888 F. Supp. 2d 34, 41 (D.D.C. 2012) (dismissing plaintiff's claims under Title VII and the ADA for failure to state a claim "because plaintiff has not alleged facts that could give rise to an inference of discrimination on the basis of race or disability."); <u>Fletcher v. Philip Morris USA Inc.</u>, No. 3:09CV284-HEH, 2009 WL 2067807, at *10 (E.D. Va. July 14, 2009) ("plaintiff has failed to state discrimination claims for which relief may be granted under Title VII and 42 U.S.C. § 1981 because the factual allegations in the Amended Complaint do not support a plausible inference that Defendants acted with the requisite discriminatory intent.").

Title VII also forbids "employer retaliation against employees for making a charge, testifying, assisting, or participating in a Title VII investigation, proceedings, or hearing." <u>Goodsite v. Norfolk S. Ry. Co.</u>, No. 3:11CV1166, 2013 WL 3943505, at *5 (N.D. Ohio July 31, 2013) (citing <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 59 (2006)). "In order to state a claim for retaliation under Title VII, a plaintiff must demonstrate that: (1) she engaged in protected activity; (2) the exercise of her protected rights was known to the defendant; (3) the defendant consequently took an employment

action adverse to plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." Reed v. Metropolitan Government of Nashville and Davidson Cnty., 286 F. App'x 251, 255 (6th Cir. 2008); see also Morris v. Oldham Cnty. Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000). Hayes has only made general allegations of participating in protected activity. He has not supported those assertions with any facts specifying what that activity was or when that activity took place.[5] Moreover, Hayes has failed to allege facts to plausibly show a causal connection between his protected activity and an adverse employment action taken by his employer. Fletcher, 2009 WL 2067807, at *10 ("Plaintiff has failed to state a retaliation claim for which relief may be granted because the factual allegations do not plausibly show a causal connection between Plaintiff's protected activity and Defendants' alleged retaliatory conduct.").

Finally, Title VII recognizes a cause of action based on a hostile work environment when the workplace is so permeated with discriminatory intimidation, ridicule, and insult that it is sufficiently pervasive to alter the conditions of the worker's employment. Harris v. Forklift Sys. Inc., 510 U.S. 17, 21 (1993). To establish a hostile work environment claim, a

---

[5]Hayes has attached a right to sue letter to his amended complaint, but that document at most indicates only that on some unspecified date Hayes filed a charge with the EEOC.

plaintiff must show (1) membership in a protected class; (2) unwelcome harassment based on membership in that protected class; (3) the harassment was sufficiently severe or pervasive, and (4) the harassment altered the conditions of the work place. E.E.O.C. v. Ralph Jones Sheet Metal, Inc., 777 F. Supp. 2d 1119, 1123 (W.D. Tenn. 2011). Assuming that the physical assaults allegedly committed by Hayes's co-workers were the unwelcome harassment at issue, Hayes has not alleged facts to plausibly show that the assaults were committed based on his membership in a protected class.

It is submitted that the amended complaint fails to state any claim for relief under Title VII.

**C.   ADA**

The amended complaint cites to the ADA, but does not contain any factual allegations that relate to any purported ADA claim.   The ADA provides, in relevant part, that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."   42 U.S.C. § 12112(a).   "To establish a prima facie case of discrimination under the ADA, a plaintiff must show (1) that she or he is an individual with a disability, (2) who was otherwise

qualified to perform a job's requirements, with or without reasonable accommodation; and (3) who was discriminated against solely because of the disability." <u>Talley v. Family Dollar Stores of Ohio, Inc.</u>, 542 F.3d 1099, 1105 (6th Cir. 2008) (citing <u>Mahon v. Crowell</u>, 295 F.3d 585, 589 (6th Cir. 2002)). Hayes has not alleged facts that would plausibly show that he is an individual with a disability or that he was discriminated against because of his disability. Therefore, it is submitted that the amended complaint fails to state a claim for a violation of the ADA.

**D.  § 1981**

Section 1981 proscribes racial discrimination and protects the rights of individuals "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws . . ."  42 U.S.C. § 1981; <u>see also</u> <u>Amini v. Oberlin College</u>, 259 F.3d 493, 502–03 (6th Cir. 2001) (a claim of discrimination based on "ancestry or ethnic characteristics" is cognizable under § 1981). In his amended complaint, Hayes cites to § 1981; however, aside from simply citing to this statute, Hayes does not address this claim in the complaint. To the extent Hayes seeks to bring discrimination and retaliation claims under § 1981, those claims are governed by the same legal framework as his claims under Title VII. <u>Wade v. Knoxville Utils. Bd.</u>, 259 F.3d 452, 464 (6th Cir. 2001).  For the same

reasons set forth above in the analysis of Hayes's Title VII claims, the court submits that Hayes has failed to state a claim under § 1981.

**E.    § 1983**

To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." Hayes v. Shelby County Trustee, 971 F. Supp. 2d 717, 733 (W.D. Tenn. 2013) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).  Here, Hayes alleges his procedural due process rights were violated in connection with his termination.  States may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  This clause has a procedural component, which "is traditionally viewed as the requirement that the government provide a 'fair procedure' when depriving someone of life, liberty, or property." EJS Props., LLC v. City of Toledo, 698 F.3d 845, 855 (6th Cir. 2012) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)).  To establish a procedural due process claim, a plaintiff must show that (1) he or she had a life, liberty, or property interest protected by the Due Process Clause; (2) he or she was deprived of this protected interest; and (3) the state did not afford adequate procedural rights.

Women's Med. Prof'l Corp. v. Baird, 438 F.3d 595, 611 (6th Cir. 2006).

The court must first determine whether Hayes has sufficiently alleged a property interest in his employment protected by the Due Process Clause. Id. Property interests are not created by the Constitution. Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). "[T]hey are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id. "A property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances." Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 565 (6th Cir. 2004). A statute or contract providing that employees may be disciplined or terminated only for "just cause" creates a property interest. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-39 (1985) (holding that a state statute providing that civil service employees could be dismissed only for "misfeasance, malfeasance, or nonfeasance in office" created a property interest in continued employment). The court finds that the amended complaint sufficiently alleges that Hayes had a property right in his civil service employment with the City. The court also finds that the amended complaint adequately alleges that

Hayes was deprived of his property interest when his employment was terminated.

The Federal Constitution defines the procedures a state must follow when depriving an individual of a property interest. <u>Loudermill</u>, 470 U.S. at 541. "Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." <u>Warren v. City of Athens, Ohio,</u> 411 F.3d 697, 708 (6th Cir. 2005). Under certain circumstances, however, a state may satisfy due process without providing notice or an opportunity to be heard before the deprivation, as set forth in <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981), <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422 (1982), <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984), and <u>Zinermon v. Burch</u>, 494 U.S. 113 (1990).

> [T]he Supreme Court reasoned in <u>Parratt</u> and in <u>Hudson</u>, that where a deprivation occurs through random and unauthorized acts, the state has not run afoul of the Due Process Clause unless there is no adequate postdeprivation process. <u>Hudson</u>, 468 U.S. at 533 (rule applies to intentional deprivations); <u>Parratt</u>, 451 U.S. at 543-44 (negligent deprivations). The state must have an opportunity to provide process, and where that cannot be accomplished before the deprivation, the state gets a chance afterward. Postdeprivation process may include, for example, a state-law tort remedy capable of making the plaintiff whole. <u>See</u> <u>Zinermon</u>, 494 U.S. at 115; <u>Fox v. Van Oosterum</u>, 176 F.3d 342, 349 (6th Cir. 1999). Where adequate postdeprivation process exists, no § 1983 due process action will lie. Therefore, the § 1983 plaintiff must plead and prove (or at the very least assert) the absence of adequate postdeprivation process in cases where the deprivation is random and

unauthorized.  <u>Macene v. MJW, Inc.</u>, 951 F.2d 700, 705
(6th Cir. 1991).

Random and unauthorized acts are those taken by
officials outside of an "established state procedure"
for depriving an individual of property.  <u>Zinermon</u>,
494 U.S. at 130; <u>Mitchell v. Fankhauser</u>, 375 F.3d 477,
481 (6th Cir. 2004); <u>see</u> <u>Macene</u>, 951 F.2d at 705-06.
For example, the Court found the acts complained of to
be random and unauthorized where a prison negligently
lost a prisoner's mail, <u>Parratt</u>, 451 U.S. at 541, and
where a prison guard intentionally destroyed an
inmate's property, <u>Hudson</u>, 468 U.S. at 533, but not
where the state afforded broad discretion to officials
in civilly committing the mentally ill, <u>Zinermon</u>, 494
U.S. at 136-38, or where a former employee's wrongful
termination suit was dismissed because the state
employment commission failed to timely hold a hearing
on the complaint, <u>Logan</u>, 455 U.S. at 435-36.

As the facts of <u>Zinermon</u> illustrate, where state
actors have been endowed with ample discretion under
state law, the realms of established state procedure
and of random and unauthorized acts may seem to run
into one another. <u>See</u> 494 U.S. at 138 (rejecting
petitioners' argument that their conduct was
"unauthorized"). At some point, a state actor's
serious error, even though discretionary, looks
awfully unauthorized, if not "random."

<u>Jameson v. Oakland Cnty.</u>, No. 10-10366, 2011 WL 3268094, at *3-4

(E.D. Mich. July 29, 2011) (internal citations omitted).

In <u>Fields v. Benningfield</u>, 544 F. App'x 626 (6th Cir.

2013), the plaintiff, Jerry Fields, worked as a jailer at the

Taylor County Detention Center in Kentucky.  <u>Id.</u> at 627.  He

hurt his shoulder while restraining an inmate, forcing him to

take medical leave.  <u>Id.</u>  Nine months after Fields was injured,

his doctor's excuse for leave expired, and Fields did not return

to work.  <u>Id.</u>  On March 15, 2010, Captain Kevin Wilson sent a

letter to Fields, informing him that he had been fired "effective as of 03/10/2010" and providing the reasons for his termination. Id. Fields took the letter to the Taylor County Fiscal Court. Id. He spoke with Judge Executive Eddie Rogers, who told him he had a right to request a hearing. Id. at 628. Fields did not ask Judge Rogers any questions about the hearing process. Id. After meeting with Judge Rogers, Fields met with Captain Wilson. Id. Captain Wilson reiterated the reasons for Fields' termination and advised Fields that he should direct any questions about his discharge to the County Attorney. Id. Fields did not contact the County Attorney or request a hearing. Id. Instead, he filed a § 1983 action, alleging that the jail violated (1) his federal due process rights by failing to provide him with a hearing before firing him and (2) state law prohibitions on wrongful discharge and retaliation. Id. The district court granted summary judgment to the jail and its employees. Id. On appeal, the court affirmed the district court's decision. The court concluded that Captain Wilson's failure to follow the jail's pre-discharge procedures was a random and unauthorized act that the state could not predict. Id. at 629. Thus, under the Parratt doctrine, Fields was required to show that his post-discharge remedies were not adequate to compensate him for his loss. Id. ("As Judge Rogers informed [Fields], he could have appealed his discharge

internally.  And Fields could (and did) file a state law action for wrongful discharge.  Both of these state law remedies had the potential to compensate Fields adequately for his loss or to obtain a reinstatement."); see also Walsh v. Cuyahoga Cnty., 424 F.3d 510, 513-14 (6th Cir. 2005) (finding that Parratt applied because director's instruction to plaintiff to clean out her desk and submit a letter of resignation was random and unauthorized act; board's established disciplinary procedure entailed a written request for disciplinary action, a predisciplinary conference, and an order of removal, which the director did not follow); Ruiz v. Fisher, 165 F.3d 28 (Table), at *5 n.4 (6th Cir. 1998) ("It is true that when the deprivation of property is caused by conduct pursuant to an established state procedure, rather than by random and unauthorized conduct, the rule of Parratt does not apply.  This, however, is not such a case.  Ruiz claims that due process was violated because the RIB *failed* to follow prison regulations, i.e., they acted *contrary* to Ohio's established administrative procedure, in an unauthorized manner.") (internal citation omitted); Martin v. City of Glasgow, 882 F. Supp. 2d 903, 909 (W.D. Ky. 2012) (stating that misapplication of state law by government officials constitute a "random and unauthorized act" under Parratt).  Where Parratt applies, a plaintiff is required to plead and prove the inadequacy of state post-deprivation

remedies in order to state a claim under § 1983.  Jefferson v. Jefferson Cnty. Pub. Sch. Sys., 360 F.3d 583, 588 (6th Cir. 2004); Copeland v. Machulis, 57 F.3d 476, 479–80 (6th Cir. 1995).

In the present case, although the amended complaint does not identify the decision makers who terminated Hayes without a pretermination hearing or notice, the allegations clearly indicate that whoever made the termination decision did so without following established procedures.  Because the termination decision was a random and unauthorized act, Parratt applies.  The amended complaint does not sufficiently allege the inadequacy of state post-deprivation remedies.  To the contrary, the amended complaint alleges that on May 11, 2012, Hayes was given an opportunity to be heard by the Civil Service Board, which "decided it would hear the full matter" on July 20, 2012. (Am. Compl. ¶ 50.)  At the July 20 hearing, the board heard from multiple witnesses and ultimately upheld the termination decision.  Hayes later challenged his termination by filing an appeal in chancery court.[6]   (Am. Compl. ¶ 50.)  Hayes's conclusory allegation that the board did not allow him to rebut the evidence, without more, does not satisfy his burden of

---

[6]Tenn. Code Ann. § 27-9-114(b)(2) provides: "Petitions for judicial review of decisions by a city or county civil service board affecting the employment status of a civil service employee shall be filed in the chancery court of the county wherein the local civil service board is located."

pleading the inadequacy of state post-deprivation remedies. Perry v. Southeastern Boll Weevil Eradication Foundation, 154 F. App'x 467, 476 (6th Cir. 2005) ("Plaintiffs have not met their pleading burden. They have not pleaded what state remedies, if any, existed, and how they were inadequate."); Pilgrim v. Littlefield, 92 F.3d 413, 417 (6th Cir. 1996) (plaintiffs seeking relief under § 1983 for due process violations need to plead what "remedies, or lack of remedies," are available, or not, and why any available remedies are inadequate).

It is submitted that the amended complaint fails to state a claim under § 1983.

**F.    § 1985**

Section 1985 prohibits conspiracies to deprive persons of certain civil rights on account of their membership in a protected class.    42 U.S.C. § 1985.    Although Hayes does not indicate which of the three subsections of § 1985 is at issue, he is presumably relying on 42 U.S.C. § 1985(3), which prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws."

> [I]n order to state a cause of action under § 1985,
> the plaintiff must allege that the defendants (1)
> conspired together, (2) for the purpose of depriving,
> directly or indirectly, a person or class of persons
> of the equal protection of the laws, (3) and committed

> an act in furtherance of the conspiracy, (4) which
> caused injury to person or property, or a deprivation
> of any right or privilege of a citizen of the United
> States, and (5) and that the conspiracy was motivated
> by racial, or other class-based, invidiously
> discriminatory animus.

Hayes, 971 F. Supp. 2d at 734 (quoting Bass v. Robinson, 167
F.3d 1041, 1050 (6th Cir. 1999)). "Conspiracy claims, even
those brought via § 1985, must be pleaded with specificity."
Perry, 154 F. App'x at 477 (citations omitted). "Therefore, the
complaint must set forth factual allegations to support the
underlying conspiracy claim in order to survive a 12(b)(6)
motion; a complaint that broadly alleges negligence with no
further factual allegations is insufficient." Id. (citing
Gutierrez v. Lynch, 826 F.2d 1534, 1538 (6th Cir. 1987)). In
his amended complaint, Hayes has not alleged any facts that
plausibly state a claim under § 1985. The conspiracy claims
have not been pleaded with specificity, nor are there
allegations that the purported conspiracy was motivated by
racial or other class-based discriminatory animus. Therefore,
the amended complaint fails to state a claim under § 1985.

**G.   § 1986**

Because Hayes has no viable claim under 42 U.S.C. § 1985,
he also has no claim under 42 U.S.C. § 1986. "Section 1986
establishes a cause of action against anyone, who has knowledge
of a conspiracy under § 1985, and 'having power to prevent or

aid in preventing the commission of the same, neglects or refuses so to do.'" Radvansky v. City of Olmstead Falls, 395 F.3d 291, 314 (6th Cir. 2005). Because the complaint does not state a claim under § 1985, it necessarily follows that there can be no liability under § 1986. Id. at 315.

## H.    18 U.S.C. §§ 241, 242, and 1513

Hayes's amended complaint also includes scattered references to other federal statutes, including 18 U.S.C. §§ 241, 242, and 1513. These statutes are criminal statutes with no private right of action. See Booth v. Henson, 290 F. App'x 919, 920-21 (6th Cir. 2008); Lucy v. Alabama Dep't of Revenue, No. CIV.A. 13-0141-CG-M, 2013 WL 3008514, at *3 (S.D. Ala. June 17, 2013) (citing Manley v. King, No. 3:12-CV-89(CDL), 2012 WL 3202915, at *2 (M.D. Ga. Aug. 3, 2012); Feldman v. Law Enforcement Assocs. Corp., 779 F. Supp. 2d 472, 497 (E.D.N.C. 2011)) (concluding that § 1513 is a criminal statute with no private cause of action); Brewster v. Wells Fargo Bank, No. 11-1232-JDB-egb, 2012 WL 4024749, at *4 n. 8 (W.D. Tenn. Sept. 12, 2012) (noting that §§ 241 and 242 do not create a private right of action). Therefore, the amended complaint fails to state a claim for relief under these criminal statutes.

## I.    Jurisdiction Over Remaining State Law Claims

Hayes has also included in his amended complaint various state law claims, such as assault, defamation, and retaliatory

discharge.  The court has supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367(a).  In its discretion, however, the court may decline to exercise supplemental jurisdiction over supplemental claims if the district court has dismissed all claims over which it has original jurisdiction.  See 28 U.S.C. § 1367(c)(3).  Here, the undersigned has recommended dismissing all of the federal claims filed against all defendants.[7]  In deciding whether to exercise supplemental jurisdiction, the court must consider the factors of judicial economy, convenience, fairness, and comity.  Musson Theatrical Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1254-55 (6th Cir. 1996).  When all federal claims are dismissed before trial, the balance of considerations usually weighs in favor of dismissing supplemental state law claims without prejudice under 28 U.S.C. § 1367(c)(3).  Id.; Novak v. MetroHealth Medical Center, 503 F.3d 572, 583 (6th Cir. 2007); Widgren v. Maple Grove Township, 429 F.3d 575, 586 (6th Cir. 2005).  After considering the factors of judicial economy, convenience, fairness, and comity in the present case, it is recommended

---

[7]The court also does not have diversity jurisdiction.  Diversity of citizenship means that the action is between "citizens of different States."  28 U.S.C. § 1332(a)(1).  A federal court has jurisdiction under § 1332 only if there is "complete diversity between all plaintiffs and all defendants."  Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89 (2005) (citations omitted).  Complete diversity of citizenship does not exist in this case, as Hayes and several defendants are citizens of Tennessee.

that, pursuant to 28 U.S.C. § 1367(c)(3), the court decline to exercise supplemental jurisdiction over Hayes's state law claims.

## III. RECOMMENDATION

For the reasons above, it is recommended that all federal claims be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B), the court decline jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3), and the state law claims be dismissed without prejudice.

Respectfully submitted,

s/ Tu M. Pham
_____
TU M. PHAM
United States Magistrate Judge

March 2, 2015
_____
Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**